IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SUSAN ANN MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv981-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

**I. Introduction**

The plaintiff, Susan Ann Miller ("Miller"), applied for supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381, *et seq.*, alleging that she is unable to work because of a disability. Her application was denied at the initial administrative level. Miller then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11ᵗʰ Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of
> not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court

must find the Commissioner's decision conclusive if it is supported by substantial evidence.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11ᵗʰ Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11ᵗʰ Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11ᵗʰ Cir. 1987).

### III.  Administrative Proceedings

Miller was 43 years old at the time of the hearing before the ALJ.  (R. 342.)  She has completed high school and one year of college.  (*Id.*)  Miller alleged that she became disabled on December 1, 2001, due to epilepsy, osteoarthritis, back pain, degenerative disc disease and short term memory loss.  (R. 84, 345, 349.)  Following the hearing, the ALJ concluded that Miller's seizure disorder was a severe impairment.  (R. 20.)  The ALJ also determined that Miller has no documented past relevant work and there is no evidence that she performed any past work at levels commensurate with substantial gainful activity.  (R. 26.)  The ALJ determined, when considering Miller's age, education, work experience, and residual functional capacity to perform light work, there are jobs that exist in significant numbers in

the national economy that Miller can perform.  (R. 27.)  Specifically, the ALJ concluded:

> If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).  The undersigned notes that an individual with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restrictions do not have a significant effect on work that exists at all exertional levels.  (See Social Security Ruling 85-15).
>
> Based on a residual functional capacity for light work, with the usual seizure precautions assigned, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.20.

(*Id.*)

## IV.  The Plaintiff's Claim

Miller asserts that the ALJ improperly relied on the Medical-Vocational Guidelines in demonstrating that there are significant jobs existing in the national economy that Miller could perform.  (Pl's Brief, Doc. No. 10, p. 3.)

## V.  Discussion

The ALJ conducted a hearing and issued a written decision in which he analyzed Miller's claim for benefits under the five-step sequential analysis.  At step two, he found that Miller's seizure disorder was a severe impairment.  After a detailed review of the medical evidence and testimony, the ALJ found that Miller had the residual functional capacity to perform light work on a regular and sustained basis, with the usual seizure precautions assigned.  (R. 23.)  Specifically, the ALJ determined that Miller should be restricted from being on unprotected elevations and near dangerous moving machinery.  (R. 27.)  At step five,

4

which asks whether there are jobs existing in significant numbers that the claimant can perform, the ALJ did not solicit the testimony of a vocational expert.  Rather, the ALJ looked to the Medical-Vocational Guidelines as a framework for his decision and determined that Miller was not disabled.

Miller's sole contention is that the Commissioner's decision is not supported by substantial evidence because there was no vocational expert testimony to support a finding that there are other jobs available that Miller could perform.  Miller does not directly challenge any aspect of the ALJ's determination that she has the residual functional capacity to perform light work with environmental restrictions.  Instead, she argues that the ALJ improperly relied on the Medical-Vocational Guidelines when determining that she can perform work that exists in significant numbers in the national economy.

> Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements.). . . Exclusive reliance on the grids is inappropriate when a claimant has a non-exertional impairment that significantly limits the claimant's basic work activities.

*Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  *See also Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985).

> [I]n determining residual functional capacity only exertional  limitations are considered . . . If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities . . . then the grid regulations do not apply. . . . However, when both exertional and nonexertional work impairments exist the grids may still be applicable.  [N]on–exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level.  Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the

nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence.

*Sryock*, 764 F.2d at 836 (internal citations omitted).

Before relying upon the grids, the ALJ must first determine, based upon the exertional limitations in the RFC, what impact, if any, they have on the full range of work. *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). The ALJ must then look to see if the non-exertional limitations in the RFC significantly reduce the occupational base for the exertional level of work. *Id.* (citing *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995)).

In this case, the ALJ determined that Miller has the residual functional capacity to perform light work and that her seizure impairment produced non-exertional limitations.[4] Specifically, the ALJ found that Miller should be limited to light work which does not require exposure to unprotected elevations or being near dangerous moving machinery. Finding these environmental restrictions would not significantly erode the occupational base of jobs at the light exertional level, the ALJ concluded Miller was "not disabled" under the framework of the Grids.

The court finds the ALJ's use of the Grids was appropriate. Citing S.S.R. 85-15, the ALJ explained, "[a] person with a seizure disorder, who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restrictions do not have a significant effect on work that exists at all

---

[4] A review of the ALJ's opinion indicates there are no exertional limitations which preclude Miller from performing the full range of work at the light exertional level.

exertional levels." (R. 27.)  The ALJ relied on Social Security Ruling ("SSR") 85-15 and used the grids as a framework when concluding that Miller could engage in substantial gainful employment.[5]

Miller argues that relying on an Agency ruling does not satisfy the Commissioner's burden.  The Commissioner may rely on rulemaking authority to determine issues that do not require case-by-case consideration.  *Heckler v. Campbell*, 461 U.S. 458 (1983).  The courts have recognized that the Commissioner's rulings are one form of vocational expertise.  *See, e.g.*, *Moore v. Astrue*, 256 Fed. Appx. 330 (11th Cir. 2007) (citing SSR 85-15 for the proposition that grasping, handling, and fingering are non-exertional limitations); *Williams v. Astrue*, No. , 2009 WL 902485, *5 (M.D. Ala. March 31, 2009) (ALJ was not required to consult a vocational expert where SSR 83-14 and 85-15 were referenced as authority when determining claimant's non-exertional impairments would have little or no effect on the occupational base of unskilled light work.);  *Ely v. Astrue*, No. 09-0243-CV-W-GAF-SSA, 2009 WL 5214902, *3 (W.D. Mo. Dec. 29. 2009) (citing 20 C.F.R. §§ 404.1569 and 416.969) (holding that an ALJ may use the Medical-Vocational Guidelines, 20 C.F.R. part 404, subpart P, appendix 2, when an individual cannot perform her past relevant work and the vocational factors are the same as the corresponding criteria of a rule).  Thus, this court cannot conclude that the ALJ's reliance on SSR 85-15 as vocational evidence to establish that Miller's residual

---

[5] It would have been preferable if the ALJ, once he elected not to ask for vocational expert testimony, had identified some specific jobs listed in the Dictionary of Occupational Titles that were not precluded by the limitations at issue, but the absence of such specification does not present reversible error in this case.  *See Eason v. U.S. Commissioner Social Administration*, No. 08cv0440, 2009 WL 278965, *3 (W.D. La.  Feb. 5, 2009) (slip opinion).

functional capacity for light work did not significantly reduce the occupational base for the exertional level of work is misplaced.

Miller contends *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), establishes that vocational expert testimony is necessary where a claimant has the residual functional capacity to perform light work that does not require working around unprotected heights or dangerous machinery. In *Marbury*, the Court held that the ALJ erred in relying exclusively on the grids when concluding that a claimant with non-exertional impairments including a seizure disorder, peptic ulcer disease, and an affective disorder who was precluded from working around unprotected heights or dangerous moving machinery could perform a full range of light work. Although both Miller and the claimant in *Marbury* were found to have the residual functional capacity to perform light work that did not require working around unprotected heights or dangerous moving equipment, the ALJ in Miller's case properly considered vocational evidence before applying the grids. In *Marbury*, the ALJ erred because he exclusively relied on the grids without considering the testimony of a vocational expert or other vocational evidence; however, in Miller's case, the ALJ relied on Social Security Ruling 85-15 as evidence and used the grids as a framework when determining whether Miller's non-exertional impairments would significantly limit her ability to perform a wide range of work at a given level.

In addition, Miller asserts that *Williams v. Halter*, 135 F.Supp. 2d 1225 (M.D. Fla. 2001), establishes that SSR 85-15 does not apply in this case. In *Williams*, the court determined that a vocational expert's testimony was necessary where a claimant had

possessed both exertional and non-exertional limitations because SSR 85-15 only applies to claimants with no exertional impairments. The Government argues that the decision in Williams is "plainly incorrect, at least as it applies to environmental limitations" and that "SSR 85-15 specifically applies to all exertional levels." (Doc. No. 11, p. 6.) It is unnecessary for this court to grapple with whether the analysis in *Williams* is correct, as the holding is clearly inapplicable to the facts in Miller's case. As previously discussed, the ALJ determined that Miller suffered only from non-exertional limitations.[6] Consequently, the ALJ did not err in relying on SSR 85-15 as vocational evidence in Miller's case.

Based on the foregoing, the court concludes that the ALJ's determination that, based on Miller's age, education, work experience, and residual functional capacity for light work, with restrictions from being on unprotected elevations or dangerous moving machinery, there are jobs that exist in significant numbers in the national economy that she can perform is supported by substantial evidence.

## VI. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the

---

[6] The ALJ discussed the plaintiff's alleged limitations and found her allegations of pain and other allegations not credible. For example, the ALJ discredited Miller's allegation that she was prohibited from driving in light of medical records indicating that she drove a vehicle. In addition, the ALJ discredited the plaintiff's allegations of disabling lower back pain based on evidence indicating that over-the-counter medication lessened her pain and a physician's speculation that she "probably" suffered from degenerative joint disease. Miller does not challenge the ALJ's findings. If the non-exertional impairments are minor or are found to be not credible, reliance on the Grids is appropriate. *See Martin v. Railroad Retirement Board*, 935 F.2d 230, 234 (11th Cir. 1991) (affirming determination that the claimant's non-exertional impairments did not significantly limit his exertional capacity for light work); *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992) (finding that since the claimant's non-exertional limitations did not significantly limit his exertional capacity for light work, application of the Grids was appropriate).

court concludes that the decision of the Commissioner is supported by substantial evidence

and is due to be affirmed.

A separate order will be entered.

Done this 30th day of March, 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE